Citation Nr: 1532787 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 12-11 340 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUE

Entitlement to a total disability rating due to individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The Veteran served on active duty in the United States Army from August 1967 to March 1969. 

This matter comes on appeal before the Board of Veterans' Appeals (Board) from a February 2012 rating decision by the Department of Veterans Affairs, Regional Office, located in St. Paul, Minnesota (RO), which denied the benefit sought on appeal. 

In November 2013, the Veteran testified before the undersigned Acting Veterans Law Judge during a Board hearing held via videoconference capabilities from the RO. A copy of the hearing transcript has been associated with the claims folder. The Board hearing was sufficient to fulfill his right to a hearing under 38 C.F.R. § 20.700(a) (2014).

In October 2014, the Board remanded the Veteran's claim so that any outstanding records of VA treatment could be updated in the claims folder and the Veteran could be provided with VA examinations relating to his TDIU claim. The record reflects that the record was updated with the Veteran's VA treatment and January 2015 VA genitourinary and psychiatric examination reports have been obtained and associated with the claims folder. The Board is satisfied that there has been substantial compliance with the remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these electronic records.





FINDINGS OF FACT

1. The Veteran is currently service connected for anxiety disorder evaluated as 50 percent disabling; residuals of prostate cancer, evaluated as 40 percent disabling; and erectile dysfunction, evaluated as noncompensable. The Veteran meets the combined schedular requirements for TDIU. 

2. The Veteran's service-connected disabilities, standing alone, are not of such severity so as to preclude substantially gainful employment.


CONCLUSION OF LAW

The criteria for entitlement to a TDIU have not been met. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.16 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

1. VA's Duty to Notify and Assist 

VA has met all statutory and regulatory notice and duty to assist provisions regarding the Veteran's claim for entitlement to TDIU. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326.

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

In a November 2011 notice letter, VA fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, at 187. The Veteran was made aware that it was ultimately his responsibility to give VA any evidence pertaining to the claim. This letter informed him that additional information or evidence was needed to support his claim, and asked him to send the information or evidence to VA. See Pelegrini II, at 120-121. Additionally, the letter described how appropriate effective dates were assigned as outlined in Dingess v. Nicholson, 19 Vet. App. 473 (2006).

The Board, therefore, finds that VA has discharged its duty to notify. For the reasons discussed above, it is not prejudicial to the appellant for the Board to proceed to finally decide this appeal.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's available service treatment records, relevant VA and private medical records, and records from Social Security Administration (SSA) have been obtained and associated with the claims folder. All records identified by the Veteran relating to this claim have been obtained, to the extent possible. The Board finds that the record contains sufficient evidence to make a decision on the claim. VA has fulfilled its duty to assist.

Pursuant to the Board's October 2014 remand directives, the Veteran was provided with January 2015 VA examinations in conjunction with his TDIU claim. These examiners reviewed the claims file, and considered the effects of his respective service-connected disabilities on his employability. These opinions were rendered after a thorough review of the claims file and is supported by the evidence of record. As such, the Board finds that the examinations in this case is adequate upon which to base a decision with regard to the claim, and a new VA examination need not be conducted at this time. See Barr v. Nicholson, 21 Vet. App. 303, 311 (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Accordingly, the Board concludes that VA has complied with its duty to assist the Veteran

The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. See Bernard v. Brown, 4 Vet. App. 384 (1993). For the foregoing reasons, the Board therefore finds that VA has satisfied its duty to notify and its duty to assist pursuant to the VCAA. See 38 U.S.C.A. §§ 5102 and 5103; 38 C.F.R. §§ 3.159(b), 20.1102; Pelegrini, supra; Quartuccio v. Principi, 16 Vet. App. 183 (2002).

2. TDIU 

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded, by reason of service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. Under the applicable regulations, benefits based on individual unemployability are granted only when it is established that the service- connected disabilities are so severe, standing alone, as to prevent the retaining of gainful employment. Under 38 C.F.R. § 4.16, if there is only one such disability, it must be rated at least 60 percent disabling to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

 In this case, the Board notes that the Veteran is service connected for anxiety disorder evaluated as 50 percent disabling; residuals of prostate cancer, evaluated as 40 percent disabling; and erectile dysfunction, evaluated as noncompensable. The Veteran's service-connected disabilities do meet the percentage rating standards for TDIU. 38 C.F.R. § 4.16(a). 

Next, in determining whether a claimant is unable to secure or follow a substantially gainful occupation, the central inquiry is "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Unlike the regular disability rating schedule, which is based on the average work-related impairment caused by a disability, "entitlement to TDIU is based on an individual's particular circumstances." Rice v. Shinseki, 22 Vet. App. 447, 452 (2009). Therefore, when the Board conducts a TDIU analysis, it must take into account the individual veteran's education, training, and work history. Hatlestad v. Derwinski, 1 Vet. App. 164, 168 (1991) (level of education is a factor in deciding employability); see Beaty v. Brown, 6 Vet. App. 532, 534 (1994) (considering Veteran's eighth grade education and sole occupation as a farmer); Moore v. Derwinski, 1 Vet. App. 356, 357 (1991) (considering veteran's master's degree in education and his part-time work as a tutor). That a veteran can no longer perform a particular job, however, is not dispositive of the issue. Rather, the criteria for a TDIU rating contemplate that a Veteran's service-connected disabilities alone preclude him from securing or following all forms of substantially gainful employment.

The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

On his October 2011 TDIU application (VA Form 21-8940), the Veteran asserted that he is no longer able to work since 2006 because of the severity of his disabilities due to anxiety and residuals of prostate cancer. The Veteran indicated that he last worked as a mail handler for the United States Postal Service in 2000. He indicated that he had completed three years of college education. Records from the Social Security Administration (SSA) reflect that the Veteran became disabled in June 2000 as a result of non-service connected back disorders. These SSA records also include the Veteran's private orthopedic treatment records which contain a June 2001 medical statement establishing that the Veteran is unable to work because of the symptoms associated with his back problems. The Veteran was also awarded nonservice-connected pension based on the severity of his back disorder in a September 2001 rating decision. 

During his November 2013 Board hearing, the Veteran testified that he stopped working as mail handler because of the severity of his non-service connected back disorder. He reported that he took an early medical retirement because he was no longer able to perform the heavy labor tasks associated with his work. He denied any problems getting along with others at his employment as result of his mental health symptoms. The Veteran further testified that three years after retiring from his position, his back felt better but he was unable to find new employment. He now reports that since he developed prostate cancer, he is unable to work because of the residual voiding dysfunction as result of treatment for his prostate cancer. The Veteran reports that he has urinary frequency which requires him to use the restroom up 18 times a day. The Veteran asserts that he is unable to find work that would allow him easy access to the restroom. 

The record contains the Veteran's VA treatment records during the applicable period under appeal. These records show that the Veteran sought treatment for his service-connected disabilities as well as several other non-service connected disorders, including neck pain, low back pain, left shoulder dysfunction, chronic obstructive pulmonary disorder (COPD), hypertension, and neuropathy in extremities. 

The record also contains various VA medical examination reports in conjunction with the Veteran's claim for TDIU. In a November 2011 VA psychiatric examination report, the VA examiner found that the Veteran's anxiety disability resulted in occupational and social impairment that caused him occasional decrease in work efficiency and intermittent inability to work. The VA examiner noted that the Veteran's anxiety disability interfered with his ability to interact others in
work-like settings, but the Veteran's primary problems with urinary urgency, chronic back pain and problems with his left shoulder created a greater impact on his ability to obtain and maintain gainful employment. In the report of a December 2011 VA general medical examination report, the VA examiner found that the Veteran had good bladder emptying function and he could improve his urinary frequency with fewer consumption of liquids. The VA examiner concluded that the Veteran's service-connected residuals of prostate cancer and erectile dysfunction did not preclude him from gainful employment. Rather, the VA examiner indicated that the severity of the Veteran's left shoulder arthritis and back disorders had a greater impact on his ability to work. 

The Veteran was afforded with another VA general medical examination in December 2012. In that examination report, the VA examiner concluded that despite the Veteran's service-connected residuals of prostate cancer, he was capable of sedentary employment that allowed him had access to a restroom. The VA examiner found that the Veteran was no longer able to work in heavy labor, but it was not a result of his service-connected disabilities. 

The report of a January 2013 VA psychiatric examination shows that the VA examiner concluded that the Veteran's service-connected anxiety disorder leads to total occupational and social impairment, but then he later commented that it leads to only occupational and social impairment with occasional decrease in work efficiency. The January 2013 VA examiner also concluded that the "Veteran's employability is impaired by his psychiatric condition but this is not a serious problem mainly because he is retired." As noted in the October 2014 remand, the Board found that as a result of these contradictions, the January 2013 VA examiner's medical opinion was inadequate and the matter was remanded for new VA examinations. 

Pursuant to the Board's October 2014 remand directives, the Veteran was afforded with VA examinations in January 2015 in order to evaluate the severity of his service-connected disabilities and determine whether his disabilities precluded his ability to obtain and maintain gainful employment. A January 2015 VA general medical examination report shows that the VA examiner found that the Veteran's residuals of prostate cancer, included frequency, urgency, and nocturia dysfunction and would likely impact the Veteran's ability to perform moderate to heavy labor, but would not impact his ability to work in sedentary or light labor employment. 

The report of a January 2015 VA psychiatric examination shows that the VA examiner found that the Veteran's anxiety disability caused him poor adaptability to work and work-like situations, but he was not precluded from employment as a result of his psychiatric symptoms only. The VA examiner noted that a review of the record did not reflect that the Veteran's anxiety disability impaired his ability to work during the 20 years of his employment at the Post Office. The VA examiner further noted that the Veteran did not adequately provide a description of how current symptoms affect his level of daily or work functioning. The VA examiner concluded that the severity of the Veteran's psychiatric disability would not significantly interfere with his ability to find employment, maintain employment, and function in work or work-like settings.

In addition, the January 2015 VA psychiatric examiner specifically addressed the conflicting findings contained in the January 2013 VA psychiatric examination report. After reviewing both exams, the VA examiner found that it appeared that the January 2013 VA examiner's assessment of "total occupational and social impairment" represented an overall picture of the Veteran's social and occupational functioning when he retired from the Postal Service as result of his multiple medical and psychological issues, and the conclusion was not solely on his psychiatric symptomatology. 

The Board finds that the objective evidence as to the severity of the Veteran's service-connected disabilities does not show that the conditions would prevent him from being employed in a sedentary or light-labor position. The record demonstrates that the Veteran cannot return to his former employment as mail handler because of the severity of his non-service connected back disorder. His service-connected residuals of prostate cancer also impact his ability to work in heavy labor due to lack of access to a restroom. However, the record does not support a finding that he cannot return to all forms of gainful employment when all the factors are considered. 

The Veteran believes that he is no longer employable because of the severity of his disability due to residuals of prostate cancer. He reports that he is unable to find work that would accommodate his disability due to urinary frequency. The record does not demonstrate, and the Veteran has not asserted, that he is unable to obtain and maintain gainful employment because his anxiety disability renders him unable to work with others. While the VA medical opinions of record demonstrate that the Veteran's residuals of prostate cancer would impact his ability to work in heavy labor, there is no finding that the Veteran is unable to work in a sedentary or light-labor employment. Instead, both January 2015 VA examiners found that the Veteran's service-connected disabilities would not preclude him from sedentary or light-labor employment. 

 Notably, the Veteran has three years of college-level education and his military occupation was a computer programmer. The record demonstrates that the Veteran has skills conducive to sedentary employment, despite his previous 20 year work-history in heavy labor. 

The Board acknowledges the Veteran's contentions that he is unable to work due to his service-connected conditions. However, the most probative medical evidence of record does not support these contentions. Lay persons can attest to factual matters of which they had first-hand knowledge. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). While the Veteran is competent to report what comes to him through his senses, he does not have medical expertise. See Layno v. Brown, 6 Vet. App. 465, 469-470 (1994). Here, the Veteran described his limitations caused by his service-connected disabilities, and the Board acknowledges that his statements in that regard are competent and of some probative value. Consequently, the Board ultimately places more weight on the January 2015 VA medical opinions regarding whether the Veteran is unemployable due solely to service-connected conditions.

Upon review of all relevant evidence of record, the Board finds the January 2015 VA medical opinions are the more probative medical evidence of record on the matter. The examiners reviewed the claims file, examined the Veteran, and considered his assertions before rendering an opinion on the matter. The examiners concluded that the Veteran's service-connected and non-service connected disabilities do not preclude him from limited or sedentary employment. Moreover, the Veteran has received three years of higher education, and he worked as computer programmer in service, which strongly suggests that he has the training to perform sedentary employment. See Hatlestad, 1 Vet. App. at 164 (level of education is a factor in deciding employability). The Board finds that the most probative medical evidence of record on the matter is against a finding that the Veteran is unemployable due to his service-connected disabilities.

 In summary, the Board finds that the weight of the lay and medical evidence does not demonstrate that the Veteran is precluded from securing or following substantially gainful employment solely by reason of his service-connected disorders or that he is incapable of performing the mental and physical acts required by employment due solely to his service-connected disorders, even when his disability is assessed in the context of subjective factors such as his occupational background and level of education. While the Board does not doubt that the Veteran's service-connected disabilities have a significant effect on his employability, the weight of the evidence does not support his contention that his service-connected disabilities are of such severity so as to preclude his participation in any form of substantially gainful employment. The Board believes that the symptomatology associated with the service-connected disabilities is appropriately compensated via the combined 70 percent rating which is currently assigned. Loss of industrial capacity is the principal factor in assigning schedular disability ratings. See 38 C.F.R. §§ 3.321(a), 4.1. As such, the benefit of the doubt doctrine is inapplicable, and the claim must be denied. See 38 C.F.R. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Entitlement to TDIU is denied.




____________________________________________
A. C. MACKENZIE
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs